## H. KAILI *vs.* INSPECTORS OF ELECTION FOR HONOLULU.

MANDAMUS.   BEFORE PRESTON, J.

AUGUST, 1877.

The Court may, by mandamus, compel Inspectors of Election to place a voter's name on the list.

In a petition by a voter for mandamus against the Inspectors, he must state his title to the right claimed.

Application for an extraordinary remedy must be perfect in the first instance, and amendments cannot be allowed.

DECISION OF PRESTON, J.

This is an application by Henry Kaili, a native Hawaiian and a resident of Honolulu, for a peremptory writ of mandamus to Jonathan Austin, L. C. Abels, M. D. Monsarrat, F. Wundenberg and H. S. Kila, the Board of Inspectors of Elections designated to register voters for nobles for the District of Honolulu, commanding them to enroll upon the register of voters for nobles in said district the name of the petitioner.

The petitioner alleges the appointment of the respondents under and by virtue of the provisions of the Constitution promulgated by the King on the 7th day of July last. That the petitioner, on the 12th day of August, took the oath required by law for registration as a voter for representatives, and on said day duly registered as a voter for representatives to the Legislature of the Kingdom, and received a certificate of such registration signed by W. Unger, one of the duly appointed Inspectors of Elections for registering of voters for representatives aforesaid, in the Fifth Ward, District of Honolulu. That on the 12th day of August the petitioner presented to the respondents said certificate of registration, and requested to be duly enrolled as a voter for nobles, but though the petitioner, on oath, said he had received the prescribed income for the prescribed time required by law as a qualification to vote for

nobles, the respondents refused to so enroll him for the reason, as petitioner was informed and believes, that they said that they did not believe the petitioner, and for no other reason. That petitioner for the year last past, and for a longer time, had received an income or wage of $600 per annum.

The Attorney-General showed cause on the following grounds:

1. That the application was premature—the obligation to register petitioner as requested, if any such obligation from the law in this behalf, had not yet matured.

2. That the petition does not allege the petitioner to have stated to respondents, or to have possessed, all the qualifications of a voter for nobles entitled to registration as such by respondents as a Board of Inspectors of Elections.

3. That the granting of the writ would be an unwarrantable interference by the Court with the just exercise of the functions by law confided to respondents as such Board of Inspectors of Elections, they being, in their capacity of such Inspectors, judicial or quasi-judicial officers, the exercise of whose judgment and discretion cannot be controlled or covered by judicial decrees or orders.

4. That respondents were justified in refusing to register petitioner upon the allegations as made by said petitioner to respondents.

The provisions of the Constitution respecting the qualifications of voters for Nobles are as follows:

Article 59: "Every male resident of the Hawaiian Islands, of Hawaiian, American or European birth or descent, who shall have attained the age of twenty years, and shall have paid his taxes, and shall have caused his name to be entered on the list of voters for Nobles for his district, shall be an elector of Nobles, and shall be entitled to vote at any election of Nobles, provided:

First. That he shall have resided in the country not less than three years, and in the district in which he offers to vote not less than three months immediately preceding the election at which he offers to vote.

Second. That he shall own and be possessed, in his own right, of taxable property in this country of the value of not less than. $3000 over and above all encumbrances, or shall have actually received an income of not less than $600 during the year next preceding his registration for such election.

Third. That he shall be able to read and comprehend an ordinary newspaper printed in either the Hawaiian, English or some European language.

Fourth. That he shall have taken an oath to support the Constitution and Laws, such oath to be administered by any person authorized to administer oaths, or by any Inspector of Elections:

Provided, however, that the requirements of a three years' residence and of ability to read and comprehend an ordinary newspaper, printed either in the Hawaiian, English, or some European language, shall not apply to persons residing in the Kingdom at the time of the promulgation of this Constitution, if they shall register and vote at the first election which shall be held under this Constitution."

Article 80 provides that "The Cabinet shall have power to make and publish all necessary rules and regulations for the holding of any election or elections under this Constitution, prior to the passage by the Legislature of appropriate laws for such purpose, and to provide for administering to officials, subjects and residents the oath to support this Constitution."

Pursuant to this power, the Cabinet made and published certain "rules and regulations for administering to officials, subjects and residents the oath to support the Constitution and laws; providing for the registration of voters and for holding elections for Nobles and Representatives."

And the Minister of the Interior, purporting to act under the said power, designated the respondents to be a Board of Inspectors to register voters for Nobles in the District of Honolulu.

The regulations for registering voters for Nobles are as follows:

14. One Board of Inspectors of Election for each election district, which board shall be designated by the Minister of the Interior, shall make out a correct alphabetical list or register of all the persons in the entire election district who may be entitled to vote for Nobles, and who shall apply to such board for such purpose, or whom the said board may find, from satisfactory evidence, to possess the requisite qualifications to vote for Nobles.

15. The chairman of such designated board shall at least twenty days before the day of holding any election for Nobles and Representatives, except as hereinafter provided, make out from such list or register a correct alphabetical list of all the persons qualified to vote for Nobles residing in the precinct or ward for which he is appointed, and cause copies of the same to be posted at the place in such precinct or ward where the election is to be held, and in at least two other public places in such precinct or ward; and at the same time he shall in like manner prepare from such list or register lists of all persons qualified to vote for Nobles residing in the other precincts or wards respectively in such election district, and shall send to each chairman of the Board of Inspectors in such district a copy of the list of persons qualified to vote for Nobles residing in his precinct or ward.

16. The chairman of such Board of Inspectors shall, upon receipt of such list of persons qualified to vote for Nobles residing in his precinct or ward, post three copies of the same in such precinct or ward in the manner above provided for posting lists of electors of Representatives.

17. The Boards of Inspectors designated to prepare lists of voters for Nobles shall hold sessions for correcting or adding to the lists of voters for Nobles, and give notice thereof in like manner as prescribed for the Inspectors of Elections for Representatives.

The regulations for posting lists of voters for Representatives referred to in Regulation 16 are as follows:

8. The Inspectors of Election of each precinct or ward shall

hold at least two sessions of reasonable and sufficient length, at some convenient place in the precinct or ward, not less than ten nor more than twenty days preceding the day of holding an election for Representatives, for the purpose of receiving evidence of the qualifications, and of registering the names of persons who may not have been previously registered by the Inspectors, and who may claim a right to vote, and also for the purpose of correcting, when necessary, said lists.

9. Notice of the time and place of holding such sessions, respectively, shall be given by the Inspectors, upon the alphabetical lists posted as herein provided; and at such sessions any one offering testimony against the right of any person to vote, whose name may appear in the said alphabetical lists, shall be reasonably heard; and if the Inspectors shall be satisfied on such hearing, that the name of such person should not have been placed on the register, they shall at once erase the same therefrom.

Regulation 10 provides: "At the first registration and election of Nobles and Representatives held hereunder, the production of tax receipts as evidence of payment of taxes shall not be required."

On the argument it was contended by the Attorney-General, for the respondents, in support of the first objection, that the Inspectors were not bound to put a voter's name upon the list until twenty days before the election, and therefore the application was premature, and I thought that this contention was correct; but the argument by Mr. Creighton, for the petitioner, induces me to alter my opinion, and I think that the list required by Article 14 should have been made up as the applications to be registered were made. The lists for the different wards, required to be made up twenty days before the election, are to be prepared from the alphabetical list mentioned in Regulation 14.

This regulation provides that the Inspectors "shall make out an alphabetical list of all the persons in the entire district," who may be entitled to vote for Nobles, and who shall apply for such

purpose, or whom the said Board may find from satisfactory evidence to possess the requisite qualifications to vote for Nobles.

The Constitution provides what those qualifications are, and it seems to me that by the regulations the Board of Inspectors may place on the register not only those who apply, but also those whom they may find qualified. And it also seems to me that it is the duty of the board to place upon the register all such persons who may apply for that purpose, and who shall, if required by the board, make oath that they are possessed of the necessary qualifications.

I will, for the present, pass over the second objection and consider the third, which raises a very important question.

It was contended by the Attorney-General that the law, by which I understand is meant the regulations, confers upon the Board of Inspectors a judicial and discretionary power to place upon the register the names of such persons only as the board may consider entitled to vote, and having so decided, however wrong such decision may be, it cannot be reviewed by this Court, and that having in their discretion and as their judgment decided that the petitioner was not qualified, that decision was final.

Many authorities, which it was contended sustained this view, were cited, and in particular, *Freeman vs. Selectmen of New Haven*, 34 Conn., 414. In which case it was held that as the Constitution of that State provided that "the selectmen, and town clerk of the several towns, shall decide on the qualifications of electors at such times and in such manner as may be prescribed by law," the Constitution had made those parties the sole judges of the qualifications of electors, and therefore a writ of mandamus could not issue. I do not think that this decision, or the authorities cited, apply to the case before me.

Our Constitution has no such provision, neither do the regulations contain any such or similar provisions.

I cannot agree with the contention made on behalf of the respondents, that if the Inspectors will not place upon the list the name of a voter properly qualified, and thereby deprive him

43

of his right to vote, this Court cannot interfere. I think that it is competent for and the duty of the Court to compel the board to insert the name of any person legally qualified to vote, upon the register of voters, on the refusal of the board to do so—by this register I mean the list provided for by Regulation 14.

In the case of *Thompson vs. Montgomery et al.*, Inspectors of Elections for Honolulu, *ante* page 21, Hartwell J. issued a mandamus to compel the board to place the name of the elector upon the register of voters, notwithstanding that the board had held that the elector was not qualified by law, and I would, without hesitation, make a similar order in this case, if I considered the petitioner was properly before the Court, as I am of opinion that the duties of the board in making up the alphabetical list under Regulation 14 are purely ministerial.

If any name is improperly on the list, the regulations provide for a revision and for the striking off such name.

I will now turn to the second objection, which I feel compelled to sustain. I deem it to be absolutely necessary that the petitioner should state in his petition the title of the petitioner to the right claimed; this may be done under a general allegation that the petitioner is legally qualified and entitled to vote for nobles for the district, although it would be much better if the petitioner should state specifically his qualifications. This the petitioner has not done, he has not stated his right generally, neither has he stated that he possesses the qualifications required by the Constitution.

The allegation is that he is a native Hawaiian and a resident of Honolulu, over twenty years of age, that he has taken the oath required by law for registration as a voter for representatives and registered as such in the fifth ward; that he presented such certificate to the respondents and requested to be enrolled as a voter and deposed on oath that he had received the prescribed income for the prescribed time required by law as a qualification to vote for nobles, and that he was in receipt of an income of $600 per year.

The Constitution requires these qualifications for a voter:

1. That he shall be a male resident of the Hawaiian Islands, of Hawaiian, American or European birth or descent.

2. That he shall have attained the age of twenty years.

3. That he shall have paid his taxes.

4. That he shall have caused his name to be enrolled on the list of voters for Nobles for his district.

5. That he shall have resided in the country not less than three years, and in the district in which he offers to vote not less than three months immediately preceding the election at which he offers to vote.

6. That he shall own and be possessed, in his own right, of taxable property in this country of the value of not less than $3000 over and above all incumbrances, or shall have actually received an income of not less than $600 during the year next preceding his registration for such election.

7. That he shall be able to read and comprehend an ordinary newspaper printed in either the Hawaiian, English, or some European language.

8. That he shall have taken an oath to support the Constitution and Laws.

For the purpose of registering and voting at the ensuing election, the three years' residence and the ability to read, etc., do not apply.

But the three months' residence in the district, and the payment of taxes, by which I understand taxes due and payable, are still necessary qualifications.

It will be seen that Regulation 10 only refers to the evidence required as to payment of taxes, and does not, as it could not, dispense with the constitutional requirement.

The petitioner, as will be seen from the foregoing remarks, has not brought himself within the requirements of the law.

He is not deprived of his vote, as he may yet apply for registration, and will, if he proves his qualification to the board, no doubt, be placed upon the revised list.

Counsel for petitioner asked leave to amend, if I should be against him on the second ground, but I do not think it is a case

in which an amendment should be allowed. This is an application for an extraordinary remedy and should have been perfect in the first instance. I cannot, therefore, give leave to amend.

The matter was important and the respondents have been defended by the Government, and I therefore do not award costs against the petitioner.

The petition is dismissed.

*C. Creighton,* for petitioner.

*C. W. Ashford,* Attorney-General, for respondent.

August 26th, 1887.